

EOD
11/02/2012

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **NANCY V. STUTES** | § | Case No. 11-10294 |
| xxx-xx-8325 | § | |
| | § | |
| Debtor | § | Chapter 7 |

| | | |
|---|---|---|
| FRANK W. VIRVA, JR., Guardian of the | § | |
| Person and Estate of Frank W. Virva, Sr., | § | |
| An Incapacitated Person | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | Adversary No. 11-1018 |
| | § | |
| NANCY V. STUTES | § | |
| | § | |
| | § | |
| Defendant | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW[1]

Upon trial of the complaint filed by the Plaintiff, Frank W. Virva, Jr. ("Plaintiff" or "Guardian") seeking a determination of whether an alleged debt owed to his ward, Frank W. Virva, Sr., by the Defendant-Debtor, Nancy V. Stutes ("Stutes" or "Debtor"), is dischargeable, the Court issues the following findings of fact and conclusions of law. The Plaintiff contends that the debt is non-dischargeable under the alternative grounds set forth in 11 U.S.C. §523(a)(2)(A), (a)(4) and (a)(6). After the trial, the Court took the matter under advisement. This decision disposes of all issues pending before the Court.

---

[1] These findings of fact and conclusions of law are not designated for publication and shall not considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other applicable evidentiary doctrines.

# **FINDINGS OF FACT**[2]

1. The Debtor-Defendant, Nancy Elizabeth Virva Stutes, is the daughter of the Plaintiff's ward, Frank W. Virva, Sr.[3]

2. The Plaintiff, Frank W. Virva, Jr., and brother of the Defendant, was appointed permanent guardian of the person and estate of their father, Frank W. Virva, Sr., by order of the Orange County Court at Law in Cause No. P-15,289 on January 21, 2010.[4]

3. The father of the family, and current ward, Mr. Virva, Sr., has generally been known as a thrifty person, not known for extravagance or uncontrolled spending.

4. Since his retirement as an electrician, Mr. Virva, Sr. has lived comfortably for a number of years on a monthly pension and a monthly social security benefit, supplemented by an income stream derived from interest earned on savings accounts and certificates of deposit at one time aggregating into the hundreds of thousands of dollars.

5. There was a general recognition among those closest to him that Mr. Virva, Sr. possessed sufficient assets to live comfortably, from an economic perspective, for the remainder of his life.

6. Since a divorce in 1990 through the latter months of 2009, the Defendant lived upon or near her father's property located at 4219 Hwy. 62 N. in Orange.

7. The Defendant was the only sibling during that time period who lived on the Virva property or was involved with Mr. Virva, Sr. on a day-to-day basis.

8. During that time period, as the capacities of Mr. Virva, Sr. diminished with age, the Defendant provided greater assistance to him in his day-to-day functions.

---

[2] All stipulated facts were set forth in the approved Joint Pre-Trial Order entered in this adversary proceeding on August 14, 2012. The Court will reference only those facts necessary or germane to a decision on this matter.

[3] ¶ 3A of the Agreed Issues of Fact.

[4] ¶ 3B of the Agreed Issues of Fact.

9. The Defendant often ran errands for food and medicine for her father, provided transportation for doctor's visits, and met other needs.

10. The Defendant often assisted her father, particularly with transportation, when he engaged in financial transactions, although she was not formally possessed of any power to alienate his property.

11. In late July 2009, the Virva family discovered that large amounts of money were missing from Mr. Virva, Sr.'s financial accounts.

12. No tangible property interests were acquired by Mr. Virva, Sr. that would account for the dissipation of his liquid financial assets.

13. After a family meeting conducted soon after that discovery, Mr. Virva, Sr. executed a general power of attorney on August 4, 2009, in favor of the Plaintiff, Frank W. Virva, Jr.[5]

14. On August 6, 2009, the Plaintiff sent correspondence to the Defendant, directing that she cease all efforts to misappropriate assets of her father and demanding the return of $30,000 plus a gold coin that had belonged to Mr. Virva, Sr. for a number of years.

15. On or about August 10, 2009, the Plaintiff learned that a warranty deed had been executed by Mr. Virva, Sr., in favor of the Defendant, whereby his homestead was conveyed to the Defendant.

16. On August 18, 2009, under the Defendant's influence, with the assistance of a new lawyer, and without issuing any notification to Frank, Jr., Mr. Virva, Sr. executed a revocation of the power of attorney issued in favor of Frank, Jr. just two weeks prior,[6] and on that same date, executed a new power of attorney in favor of the Defendant.[7]

---

[5] Document #1 contained in Defendant's Ex. 3.

[6] Document #2 contained in Defendant's Ex. 3.

[7] Document #3 contained in Defendant's Ex. 3.

17. In light of these occurrences and other concerns about the eroding abilities of Mr. Virva, Sr., the Orange County Court at Law appointed the Plaintiff, Frank W. Virva, Jr., as temporary guardian and, ultimately, as permanent guardian of the person and estate of Mr. Virva, Sr.[8]

18. In his capacity as Guardian, the Plaintiff initiated litigation against the Defendant in the 260th Judicial District Court in and for Orange County, Texas under case no. D-1000072-C and styled *Frank W. Virva, Jr., Guardian of the Person and Estate of Frank W. Virva, Sr. v. Nancy Virva Stutes* (the "State Court Litigation").[9]

19. The state court petition filed by the Plaintiff sought the rescission of the warranty deed under which Mr. Virva, Sr. had transferred his real property to the Defendant.

20. The state court petition further alleged that Mr. Virva, Sr. had suffered monetary damages caused by the Defendant's undue influence, conversion and fraud with reference to unauthorized withdrawals from his monetary accounts and other negotiable instruments owned by Mr. Virva, Sr.[10]

21. The state court trial between the Plaintiff and the Defendant began on January 5, 2011.

22. The state court conducted a full evidentiary trial with consideration of all evidence in favor of the Plaintiff as well as the evidence supporting the defenses of the Defendant.

23. On January 21, 2011, the 260th Judicial District Court entered findings of fact in support of its judgment in which it specifically found, among other things, that:[11]

    (a) Mr. Virva, Sr. paid his own expenses and managed his own money for many years in retirement without any assistance from the Defendant.

---

[8] ¶ 3B of the Agreed Issues of Fact.

[9] ¶ 3C of the Agreed Issues of Fact.

[10] Plaintiff's Ex. D.

[11] Plaintiff's Ex. B. The findings were expressed in narrative form by the state court, which this Court has dissected for the purposes of clarity.

(b) Mr. Virva, Sr. would help out his children by making loans to them, which he expected to be paid back, and, in one specific instance, the Plaintiff-Guardian, Frank W. Virva, Jr. paid back certain loans to Mr. Virva, Sr.

(c) Mr. Virva, Sr. intended for his kids to share equally in his estate. This is confirmed by the fact that he had set up individual CDs in the name of his children at both Capital One Bank and at Chase Bank.

(d) For at least 14 or 15 years prior to the trial, Mr. Virva, Sr. was able to pay his expenses without cashing CDs or making unusual withdrawals from his accounts in the banks.

(e) This general trend took a sudden and drastic change beginning in early 2009, at a time when Mr. Virva, Sr. was elderly and beginning to show signs of dementia or forgetfulness.

(f) Drastic events occurred as to Mr. Virva, Sr.'s finances during this period in 2009 and Mr. Virva, Sr. was not in control of his finances during this period.

(g) In a period of seven months in 2009, more than $100,000 was spent or otherwise dissipated.

(h) A sampling of the withdrawals included: April 29, 2009 - $4,200 received by Mr. Virva, Sr.; next day $160; next day $260; next day $285; next day $215.

(i) On May 11, 2009, Mr. Virva, Sr. cashed $20,000 in CDs and deposited the funds in the Defendant's account. Sixty days after that deposit, the money was all gone and no one can say where it was spent.

(j) In addition, over $25,000 worth of [savings] bonds were cashed in that period and, again, no one knows where it went.

(k) Apart from the $10,000 CD designated for her that Mr. Virva, Sr. tendered voluntarily as a gift to the Defendant, the sum of $60,000 was withdrawn from Mr. Virva, Sr.'s accounts and $26,000 was withdrawn from savings bonds.

(l) In addition, $10,000, along with a gold coin, was taken by the Defendant from Mr. Virva, Sr.'s safety deposit boxes.

(m) The issues regarding the missing funds were discovered in late July when another of Mr. Virva, Sr.'s daughters, Susan Anderson, took Mr. Virva, Sr. to Capital One Bank only to discover that he no longer had any funds at the bank.

(n) It was also uncovered that substantial sums of money had been withdrawn from Orange Savings Bank.

(o) The Defendant told her sister, Susan Anderson, that the missing money was mainly spent on gambling and "to get over it."

(p) Mr. Virva, Sr. authorized the spending of some of this money.

(q) However, Mr. Virva, Sr. had no idea that almost $100,000 of his money had been taken and spent within a period of six months.

(r) Mr. Virva, Sr. would not have authorized such uncontrollable spending of his money.

(s) Upon discovery of the missing money by family members, a power of attorney in favor of his son, Frank, Jr., was executed by Mr. Virva, Sr.

(t) On August 6, 2009, Frank, Jr. sent a cease and desist letter to the Defendant and her daughter. He also sent the Defendant a demand letter.

(u) The Defendant told Mr. Virva, Sr. that Frank, Jr. had stolen his money.

(v) Mr. Virva, Sr. signed a deed on August 10, 2009, conveying his real property to the Defendant under the influence of fraudulent information provided by the Defendant.

(w) The deed was fraudulently obtained by the Defendant from Mr. Virva, Sr. and should be set aside and restored to Mr. Virva, Sr.

(x) The Defendant concealed from Mr. Virva, Sr. that she and her daughter had caused more than $100,000 of his money to disappear over a 6-month period.

(y) The Defendant concealed from Mr. Virva, Sr. where his money was being spent and how much of his money was being spent.

  (z)  The only plausible explanation for the expenditure of such funds in such a short time is that the Defendant was gambling the funds away just as she had told her sister.

  (aa)  Mr. Virva, Sr. is entitled to recover from the Defendant the sum of $60,000.00, an amount that is clearly supported by the evidence, and judgment is rendered in his favor for such amount.

24. On the basis of those findings of fact, the 260th Judicial District Court thereafter entered judgment on March 10, 2011 in favor of the Plaintiff and against the Defendant in the amount of $60,000.00 (the "Judgment").[12]

25. The issues as determined by the 260th Judicial District Court in the State Court Litigation were essential to that court's judgment.

26. All of the issues as determined by the 260th Judicial District Court were fully and fairly litigated in the State Court Litigation and the Court specifically referenced that its findings were rendered upon review of written closing arguments and "the evidence that was presented."[13]

27. The parties in this adversary case are identical to those in the State Court Litigation.

28. Thus, the Plaintiff is a creditor of the Defendant-Debtor by virtue of the Judgment.

29. The Defendant filed her voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on May 4, 2011 – less than 60 days after the entry of the Judgment.

30. The Plaintiff timely filed his Complaint to Determine Dischargeability of a Debt on August 2, 2011, seeking to except his claim arising from the Judgment from the scope of any discharge granted to the Defendant.

31. The Plaintiff contends that the Defendant is precluded from challenging the legitimacy of its claim arising from the Judgment through the principles of

---

[12] Plaintiff's Ex. A. The judgment amount awarded is a conservative figure, in light of the state court's finding of a concealment by the Defendant of an amount exceeding $100,000. However, the Plaintiff's complaint addresses only the judgment amount.

[13] Plaintiff's Ex. B.

collateral estoppel and that, through those established facts and those demonstrated at trial, his claim against the Defendant is non-dischargeable under various subsections of 11 U.S.C. §523(a).

32. A significant portion of the factual and/or legal issues raised by the Defendant in her defense before this Court was, or should have been, presented in the State Court Litigation for determination and constitute an impermissible collateral attack upon the determinations arising from the State Court Litigation. These include, but are not limited to:

   (a)   whether the affidavit executed by Mr. Virva, Sr. on August 11, 2011,[14] purporting to validate or ratify the liquidation of his various financial accounts in 2009, is credible and thereby protects the Defendant from any liability for misappropriation of the financial assets of her father;

   (b)   whether the Defendant was blissfully ignorant about how her father was spending his money in 2009 and that she never inquired about such things;

   (c)   whether the Defendant was responsible for the disappearance of more than $100,000 from the holdings of Mr. Virva, Sr. over a six-month period;

   (d)   whether the Defendant was involved in an active concealment of the truth from Mr. Virva, Sr. as to the amount of money that had been appropriated by her from his holdings and how such funds were being spent.

   (d)   whether the Defendant misled her father about who was responsible for the missing funds.

33. This Court agrees with the assessment made by Judge Hahn of the 260th Judicial District Court that the Defendant's testimony that she had no knowledge of, and had no involvement in, her father's financial affairs in 2009 "is incredulous."

34. The unauthorized withdrawals made the subject of the Judgment occurred prior to the execution of any powers of attorney by Mr. Virva, Sr.

35. The Defendant knew that she was not authorized to utilize funds derived from the financial holdings of Mr. Virva, Sr., in an amount at least equivalent to the judgment amount of $60,000.00.

---

[14] Defendant's Ex. 1.

36. The unauthorized utilization of the funds derived from the financial holdings of Mr. Virva, Sr. by the Defendant, in an amount at least equivalent to the judgment amount of $60,000.00., was a deliberate or intentional act of the Defendant.

37. The Defendant knew that her unauthorized utilization of the funds derived from the financial holdings of Mr. Virva, Sr., in an amount at least equivalent to the judgment amount of $60,000.00, would deprive Mr. Virva, Sr. of assets upon which he needed to rely in his remaining retirement years and that he intended to share with all of his children at some future time.

38. The Defendant knew that her unauthorized utilization of the funds derived from the financial holdings of Mr. Virva, Sr., in an amount at least equivalent to the judgment amount of $60,000.00, was substantially certain to cause financial loss and injury to the estate of Mr. Virva, Sr.

39. By knowingly and deliberately engaging in an unauthorized utilization of the funds derived from the financial holdings of Mr. Virva, Sr., in an amount at least equivalent to the judgment amount of $60,000.00, and in a manner substantially certain to cause financial loss and injury, the Defendant inflicted a deliberate and intentional injury upon the estate of Mr. Virva, Sr.

40. To the extent any of these findings of fact constitute conclusions of law, the Court expressly adopts them as such.

## CONCLUSIONS OF LAW

1. This Court has subject matter jurisdiction under 28 U.S.C. §§1334 and 11 U.S.C. §523. This Court has personal jurisdiction over the parties to this adversary proceeding.

2. This Court has the authority to enter a final judgment in this adversary proceeding since it constitutes a core proceeding under 28 U.S.C. §157(b)(2)(I) and (O).

3. The Plaintiff's Complaint seeks a determination that the debt which it alleges is owed to it should be excepted from discharge under §523(a)(2)(A) as a debt obtained by false pretenses, a false representation or actual fraud.

4. In seeking such an exception to the Debtor's discharge, the Plaintiff assumes the burden of proof under a preponderance of the evidence standard. *Grogan v.*

    *Garner*, 498 U.S. 279, 286 (1991).

5. All exceptions to discharge under §523 "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start."[15] *In re Hudson*, 107 F.3d 355, 356 (5th Cir. 1997).

*Collateral Estoppel*

6. "Collateral Estoppel or, in modern usage, issue preclusion, 'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Schiro v. Farley*, 510 U.S. 222, 232 (1994) (internal quotations omitted).

7. In other words, "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U. S*., 440 U.S. 147, 153 (1979) (*citing Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).

8. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Id.* at 153-54.

9. In the bankruptcy dischargeability context, the Fifth Circuit stated in *Fielder v. King (Matter of King),* 103 F.3d 17, 19 (5th Cir. 1997):

> "Issue preclusion will prevent a bankruptcy court from determining dischargeability issues for itself only if 'the first court has made specific, subordinate, factual findings on the identical dischargeability issue in question . . . and the facts supporting the court's findings are discernible from that court's record.'"], *citing Dennis v. Dennis (Matter of Dennis),* 25 F.3d 274, 278 (5th Cir. 1994) ["Collateral estoppel applies in bankruptcy courts only if, inter alia, the first court has made . . . factual findings on the identical dischargeability

---

[15] However, a fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan*, 498 U.S. at 286-87.

    issue in question – that is, an issue which encompasses the same prima facie elements as the bankruptcy issue."].

10. Thus, while the doctrine of issue preclusion applies in bankruptcy dischargeability litigation, a bankruptcy court retains exclusive jurisdiction to determine whether a debt is dischargeable. *Grogan v. Garner*, 498 U.S. 279, 284 n. 11 (1991).

11. When an issue that forms the basis for the creditor's theory of non-dischargeability has been actually litigated in a prior proceeding, neither the creditor nor the debtor may re-litigate those grounds. *RecoverEdge, L.P. v. Pentecost,* 44 F.3d 1284, 1294 (5th Cir. 1995).

12. As the party asserting the preclusive effect of the findings arising from the State Court Litigation, the Plaintiff has the burden of proof on all elements of collateral estoppel.

13. The inquiry into the preclusive effect of a state court judgment is guided by the full faith and credit statute, which states that "judicial proceedings . . . shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such State . . . from which they are taken." 28 U.S.C. §1738 (1994).

14. Thus, federal courts look to the principles of issue preclusion utilized by the forum state in which the prior judgment was entered. *Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 181 (5th Cir. 1997).

15. Because the judgment against the Defendant was entered in a Texas state court, this Court applies the Texas law of issue preclusion. *Pancake v. Reliance Ins. Co. (In re Pancake)*, 106 F.3d 1242, 1244 (5th Cir. 1997); *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195 (5th Cir. 1996).

16. Under Texas law, a party is collaterally estopped from raising an issue when: (1) the facts sought to be litigated in the second case were fully and fairly litigated in the first; (2) those facts were essential to the prior judgment; and (3) the parties were cast as adversaries in the first case. *Bonniwell v. Beech Aircraft Corp*., 663 S.W.2d 816, 818 (Tex. 1984), *Cannon v. Texas Independent Bank*, 1 S.W.3d 218, 224 (Tex. App. – Texarkana 1999, pet. denied).

17. The decision was rendered on the merits by the 260th Judicial District Court and is now a final judgment.

18. The Defendant is thus barred by the principles of collateral estoppel from re-litigating the following determinations arising from the State Court Litigation:

   (a) Mr. Virva, Sr. paid his own expenses and managed his own money for many years in retirement without any assistance from the Defendant.

   (b) Mr. Virva, Sr. would help out his children by making loans to them, which he expected to be paid back, and, in one specific instance, the Plaintiff-Guardian, Frank W. Virva, Jr. paid back certain loans to Mr. Virva, Sr.

   (c) Mr. Virva, Sr. intended for his kids to share equally in his estate. This is confirmed by the fact that he had set up individual CDs in the name of his children at both Capital One Bank and at Chase Bank.

   (d) For at least 14 or 15 years prior to the trial, Mr. Virva, Sr. was able to pay his expenses without cashing CDs or making unusual withdrawals from his accounts in the banks.

   (e) This general trend took a sudden and drastic change beginning in early 2009, at a time when Mr. Virva, Sr. was elderly and beginning to show signs of dementia or forgetfulness.

   (f) Drastic events occurred as to Mr. Virva, Sr.'s finances during this period in 2009 and Mr. Virva, Sr. was not in control of his finances during this period.

   (g) In a period of seven months in 2009, more than $100,000 was spent or otherwise dissipated.

   (h) A sampling of the withdrawals included: April 29, 2009 - $4,200 received by Mr. Virva, Sr.; next day $160; next day $260; next day $285; next day $215.

   (i) On May 11, 2009, Mr. Virva, Sr. cashed $20,000 in CDs and deposited the funds in the Defendant's account. Sixty days after that deposit, the money was all gone and no one can say where it was spent.

   (j) In addition, more than $25,000 worth of [savings] bonds were cashed in that period and, again, no one knows where it went.

(k)     Apart from the $10,000 CD designated for her that Mr. Virva, Sr. tendered voluntarily as a gift to the Defendant, the sum of $60,000 was withdrawn from Mr. Virva, Sr.'s accounts and $26,000 was withdrawn from savings bonds.

(l)     In addition, $10,000, along with a gold coin, was taken by the Defendant from Mr. Virva, Sr.'s safety deposit boxes.

(m)     The issues regarding the missing funds was discovered in late July when another of Mr. Virva, Sr.'s daughters, Susan Anderson, took Mr. Virva, Sr. to Capital One Bank only to discover that he no longer had any funds at the bank.

(n)     It was also uncovered that substantial sums of money had been withdrawn from Orange Savings Bank.

(o)     The Defendant told her sister, Susan Anderson, that the missing money was mainly spent on gambling and "to get over it."

(p)     Mr. Virva, Sr. authorized the spending of some of this money.

(q)     However, Mr. Virva, Sr. had no idea that almost $100,000 of his money had been taken and spent within a period of six months.

(r)     Mr. Virva, Sr. would not have authorized such uncontrollable spending of his money.

(s)     Upon discovery of the missing money by family members, a power of attorney in favor of his son, Frank, Jr., was executed by Mr. Virva, Sr.

(t)     On August 6, 2009, Frank, Jr. sent a cease and desist letter to the Defendant and her daughter. He also sent the Defendant a demand letter.

(u)     The Defendant told Mr. Virva, Sr. that Frank, Jr. had stolen his money.

(v)     Mr. Virva, Sr. signed a deed on August 10, 2009, conveying his real property to the Defendant under the influence of fraudulent information provided by the Defendant.

(w)     The deed was fraudulently obtained by the Defendant from Mr. Virva, Sr. and should be set aside and restored to Mr. Virva, Sr.

(x)     The Defendant concealed from Mr. Virva, Sr. that she and her daughter had caused more than $100,000 of his money to disappear over a 6-month period.

(y)     The Defendant concealed from Mr. Virva, Sr. where his money was being spent and how much of his money was being spent.

(z)     The only plausible explanation for the expenditure of such funds in such a short time is that the Defendant was gambling the funds away just as she had told her sister.

(aa)     Mr. Virva, Sr. is entitled to recover from the Defendant the sum of $60,000.00, an amount that is clearly supported by the evidence, and judgment is rendered in his favor for such amount.[16]

*Nondischargeability Under §523(a)(6):*
*Debt Arising from Willful and Malicious Injury*

19.     The Plaintiff contends that the debt owed to his father's estate should be excepted from discharge as a debt arising from a willful and malicious injury inflicted upon him by the Debtor-Defendant.

20.     Section 523(a)(6) of the Bankruptcy Code provides that:

(a) A discharge under Section 727 . . . of this title does not discharge an individual debtor from any debt . . .

    (6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

---

[16] This is admittedly a mixed question of law and fact, but such mixed determinations are also subject to the restraint of collateral estoppel. *Ackerman v. American Airlines, Inc.*, 924 F. Supp. 749, 754 (N.D. Tex. 1995) ["Collateral estoppel may apply to preclude re-litigation of both issues of law and issues of fact if those issues were conclusively determined in a prior action."] *(citing United States v. Stauffer Chemical Co.*, 464 U.S. 165, 170–71 (1984).

21. In *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), the United States Supreme Court significantly narrowed the scope of debts that could be deemed nondischargeable under §523(a)(6).

22. The *Geiger* decision clearly requires that an actor inflict a deliberate or intentional injury, not merely that an actor take a deliberate or intentional act that leads to injury.

23. As subsequently interpreted by the Fifth Circuit, a recovery under §523(a)(6) for a "willful and malicious injury" now requires proof that such injury arose from a deliberate and intentional act by a debtor that was inflicted under circumstances evidencing either:
    (1) an objective substantial certainty of harm; or
    (2) a subjective motive to cause harm.
*Miller v. J. D. Abrams, Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998), *cert. denied, Miller v. J.D. Abrams, Inc.*, 526 U.S. 1016 (1999); *see also Caton v. Trudeau (In re Caton),* 157 F.3d 1026, 1029 (5th Cir. 1998).

24. Conversion is the wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc*., 474 S.W.2d 444, 447 (Tex.1971).

25. To establish a claim for conversion under Texas law, a plaintiff must only prove that (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property. *Burns v. Rochon*, 190 S.W.3d 263, 267-68 (Tex. App.– Houston [1st Dist.] 2006, no pet.); *Akin v. Santa Clara Land Co., Ltd. ,* 34 S.W.3d 334, 344 (Tex. App.– San Antonio 2000, pet. denied).

26. Thus, because an intent to convert is not an essential element of a conversion claim under Texas law, *Nxcess Motor Cars, Inc. v. JP Morgan Chase Bank, N.A.*, 317 S.W.3d 462, 471 (Tex. App.– Houston [1st Dist.] 2010, pet. denied), there must be evidence that the act of conversion was a willful or knowing action by an individual in order for a Texas conversion claim to be rendered not dischargeable as a willful and malicious injury under 11 U.S.C. §523(a)(6). *McClendon v. DeVoll (In re DeVoll)*, 266 B.R. 81, 95 (Bankr. N.D. Tex. 2001).

27. However, in cases in which a conversion was performed knowingly, intentionally, or deliberately, such an act of conversion will constitute a willful and malicious injury within the meaning of the exception. *Andra Group, L.P. v. Gamble-Ledbetter (In re Gamble-Ledbetter)*, 419 B.R. 682, 699 (Bankr. E.D. Tex. 2009); *Cybuski v. Utley (In re Utley)*, 2010 WL 3342242, at *4 (Bankr. E.D. Tex. 2010) (*citing Chrysler Credit Corp. v. Perry Chrysler Plymouth, Inc*., 783 F.2d 480, 486 (5th Cir.1986)); see also, 4 COLLIER ON BANKRUPTCY ¶ 523.12[4] at p. 523-96 (16th ed. 2009).

28. By knowingly and deliberately engaging in an unauthorized utilization of the funds derived from the financial holdings of Mr. Virva, Sr., in an amount at least equivalent to the judgment amount of $60,000.00, and in a manner substantially certain to cause financial loss and injury, the Defendant inflicted a willful and malicious injury upon Mr. Virva, Sr. and his estate.

29. Thus, the judgment debt of $60,000.00, plus appropriate post-judgment interest as allowed by Texas law, is therefore excepted from discharge as a debt for a willful and malicious injury to another entity or to the property of another entity pursuant to 11 U.S.C. §523(a)(6).

30. Because the referenced debt is excepted from discharge under 11 U.S.C. §523(a)(6), the Court need not reach the Plaintiff's arguments under §523(a)(2) and §523(a)(4) of the Bankruptcy Code.

31. To the extent any of these conclusions of law constitute findings of fact, the Court expressly adopts them as such.

32. An appropriate judgment shall be entered consistent with these findings and conclusions.

Signed on 11/02/2012

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE